## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

EDDIE L. SMITH,

     Claimant,

     vs.

ANDREW M. SAUL,

Commissioner of Social Security,[1]

     Defendant.

No. 18-CV-78-CJW

**REPORT AND RECOMMENDATION**

_____

     Claimant Eddie L. Smith ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

### I.    BACKGROUND

     I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 12) and only summarize the pertinent facts here. Claimant was born August 16, 1969. (AR[2] at 267.) Claimant has a GED. (*Id.* at 292.) He allegedly became disabled due to "heart problems, one lung, and schizophrenia affective disorder." (*Id.* at 291.) Claimant's

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

alleged onset of disability date was August 13, 2005.[3]  (*Id.* at 267.)  Claimant stopped working on December 31, 2011 when his parole officer made him quit his job because the place he worked used an ingredient found in methamphetamine.  (*Id.* at 267, 291.)  Claimant filed his application for SSI on September 10, 2014.[4]  (*Id.* at 267-72.)  Claimant's claim was denied originally on February 24, 2015 and on reconsideration on May 11, 2015.  (*Id.* at 112-45.)  Claimant filed a Request for Hearing on June 26, 2015.  (*Id.* at 165.)  A video hearing was held on June 1, 2017 with Claimant and his attorney, Hugh Field, in Cedar Rapids, Iowa and ALJ Christine A. Cooke and vocational expert ("VE") Marianne K. Lumpe in Kansas City, Missouri.  (*Id.* at 56-88.)  Claimant; his wife, Lynnette Smith;  and the VE testified.  (*Id.* at 58-87.)

The ALJ entered an unfavorable decision on July 20, 2017.  (*Id.* at 12-24.)  On September 7, 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision.  (*Id.* at 265.)  On May 22, 2018, the Appeals Council found there was no basis to review the ALJ's decision.  (*Id.* at 1-3.)  Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On July 30, 2018, Claimant timely filed his complaint in this Court.  (Doc. 4.)  The case was fully briefed on April 16, 2019.  On April 17, 2019, the Honorable C.J.

---

[3] Claimant filed a prior SSI application on March 29, 2011, which was denied by an ALJ on July 26, 2013.  (AR 89-100.)  The Appeals Council denied review and Claimant did not appeal the decision to the District Court.  (*Id.* at 107-11.)  Thus, the July 26, 2013 decision is the final decision on  that application.  *See* 20 C.F.R. § 416.1481.

[4] The earliest a claimant can receive benefits is the date he applies for benefits. *See Cruse v. Bowen*, 867 F. 2d 1183, 1185 (8th Cir. 1989); *Duncan v. Astrue*, No. CIV. 06-5236, 2007 WL 4335474, at *2 (W.D. Ark. Dec. 7, 2007) ("It is a long established holding of the Eighth Circuit that SSI benefits are not payable for any period prior to the date a claimant files a [sic] SSI application.").

2

Williams, United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).  At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.*  If so, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-

3

time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§

4

404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    The ALJ'S Findings

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since September 10, 2014, the alleged onset date. (AR at 15.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: "COPD/emphysema; history of partial right pneumonectomy; remote history of heart valve replacement as a child; schizophrenia; anxiety; and personality disorder." (*Id.*)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations. (*Id.*) Specifically, the ALJ considered Claimant's lung disorders under listing 3.02 for chronic pulmonary insufficiency and

his mental impairments under listings 12.03 *(*schizophrenia spectrum and other psychotic disorders), 12.06 (anxiety and obsessive compulsive disorders), and 12.08 (personality and impulse-control disorders). (*Id.*)

At step four, the ALJ found that Claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) and with the following additional limitations:

> Claimant is able to sit for 8 hours out of 8 hours; and he can stand and walk for 2 hours out of 8 hours spaced throughout the workday. Claimant is able to lift, carry, push, or pull negligible weights, such as files or documents, weighing up to 5 pounds frequently and up to and including 10 pounds occasionally. Claimant should never lift, carry, push, pull, or reach above shoulder level bilaterally. He should never climb ladders, ropes, or scaffolding. Claimant can occasionally climb stairs or ramps; kneel; crouch; stoop; and crawl. Claimant should never engage in hard, repetitive grasping, such as would be required to open a sealed jar or use pliers, with his right hand. He must have an indoor work environment. Claimant should never be exposed to extreme cold, extreme heat; wetness; humidity; or noxious fumes, odors, dust, or airborne particulate. He should never be exposed to hazards.
>
> Claimant must have job duties that are simple, repetitive, and routine in nature. He should never be expected to exercise independent judgment regarding the nature of his job duties. He must have duties that are consistently the same with little or no change. These duties should never require interaction with the public. Claimant can have up to occasional contact with co-workers and with supervisors.

(*Id.* at 16.) The ALJ also found that Claimant had no past relevant work. (*Id.* at 22.)

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Claimant could perform, including Ampoule Sealer, Semi-Conductor Loader, and Semi-Conductor Bonder. (*Id.* at 23.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 24.)

**B.     *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III.     DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to clarify the apparent unresolved conflict between the RFC and the reasoning level requirements of

the jobs relied on to deny benefits and (B) failing to fully and fairly develop the record concerning Claimant's physical limitations. Claimant also challenges the validity of the ALJ's decision because he contends ALJ Cooke was not properly appointed under *Lucia v. SEC*, 138 S. Ct. 2044 (2018). (Doc. 13 at 1.)

**A.** **There is no unresolved conflict between Claimant's RFC and the reasoning level requirements of the jobs relied on to deny benefits.**

To show that significant numbers of jobs exist that a person with the claimant's RFC can perform, an ALJ "may rely on a vocational expert's response to a properly formulated hypothetical question." *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004). However, "VE testimony that conflicts with the *DOT*[5] does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (quotation omitted). "If there is an 'apparent unresolved conflict' between VE testimony and the *DOT*, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the *DOT* information.'" *Id.* at 989-90 (quoting SSR 00-4p, 2000 WL 1898704, at **2-4) (brackets in original).

Claimant argues the following:

[T]here is an apparent conflict between the RFC limitation of "Claimant must have job duties that are simple, repetitive, and routine in nature. He should never be expected to exercise independent judgment regarding the nature of his job duties. He must have duties that are consistently the same with little or no change" (TR 16) and the Reasoning Level of 2 required per the Dictionary of Occupational Titles to perform the ampoule sealer, semiconductor loader, and semi-conductor bonder jobs identified by the

---

[5] *Dictionary of Occupational Titles*

> vocational expert, so substantial evidence does not support the ALJ's
> conclusion that Mr. Smith could perform those jobs.

(Doc. 13 at 5.) For support, Claimant relies on *Thomas v. Berryhill*, which held there was a conflict between an RFC that limited the claimant to jobs with "short, simple instructions" and jobs requiring level 2 reasoning. 916 F.3d 307, 313-14 (4th Cir. 2019), *as amended* (Feb. 22, 2019). Level 2 reasoning requires workers to "carry out 'detailed but uninvolved . . . instructions.'" *Id.* at 311. I find that *Thomas* can be distinguished from the case at bar. *Thomas* focused specifically on instructions—the instructions included in the claimant's RFC versus the instructions that workers in reasoning level 2 jobs are expected to understand and execute. Here, the comparison is not apt. Claimant's RFC does not contain a limitation on the instructions Claimant can understand and successfully execute. Instead, the RFC only contains limitations on Claimant's job duties. Thus, not only is *Thomas* not binding precedent on this Court, it is also not a useful case for resolving the conflict currently at bar.

I likewise find that the case at bar can be distinguished from *Jennings v. Berryhill*, upon which Claimant also relies. No. C17-3062-LTS, 2018 WL 4107911 (N.D. Iowa Aug. 29, 2018). *Jennings* held that "there was tension between" a claimant's RFC that limited him to "simple, routine tasks with simple instructions" and a job requiring reasoning level 3 and remanded the case to resolve the tension. 2018 WL 4107911, at **3-4. This case can be distinguished from *Jennings* because the job at issue in *Jennings* required level 3 reasoning and the jobs at issue in this case require only level 2 reasoning. This case can be further distinguished from *Jennings* because the *Jennings* RFC, like the *Thomas* RFC, contained an instructions limitation that Claimant's RFC does not contain.

Claimant also relies on *Stanton v. Comm'r, Soc. Sec. Admin.*, which held there was an apparent unresolved conflict between an RFC that limited the claimant to jobs with "simple one-to-two-step instructions" and the level 2 reasoning jobs identified by

9

the VE. 899 F.3d 555, 559-60 (8th Cir. 2018). Claimant argues that the VE in the case at bar "appears to have meant to incorporate a '1-to-2-step' limitation into Mr. Smith's RFC since the ALJ had not explained why such a limitation was not adopted, which makes . . . *Stanton v. Comm'r*, especially applicable." (Doc. 13 at 6.) I do not agree.

In *Moore v. Astrue* the Eighth Circuit rejected the argument that an RFC limiting a claimant to "carrying out simple job instructions" and performing "simple, routine and repetitive work activity at the unskilled task level" was incompatible with jobs requiring level 2 reasoning. 623 F.3d 599, 604 (8th Cir. 2010). The claimant in *Moore* argued that the requirements of his RFC could only be satisfied with jobs requiring level 1 reasoning, "defined in the *DOT* as the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions.'" *Id.* (quoting *DOT*) (bracket in original). In affirming the ALJ's decision, *Moore* reasoned as follows:

> [T]he ALJ did not limit "simple" job instructions to "simple *one- or two-step* instructions" or otherwise indicate that Moore could perform only occupations at a *DOT* Level 1 reasoning level. Indeed, the Level 2 reasoning definition refers to "detailed but *uninvolved*" instructions. *DOT* at 1011 (emphasis added). The dictionary defines "uninvolved" as "not involved," and in turn defines "involved" as "complicated, intricate." *Webster's Third New Int'l Dictionary* 1191, 2499 (2002). There is no direct conflict between "carrying out simple job instructions" for "simple, routine and repetitive work activity," as in the hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate.

*Id.* *Moore* also reiterated the rules that *DOT* job descriptions provide maximum job requirements and that without evidence to the contrary, there is no reason to believe the VE did not consider all the limitations provided in a hypothetical when presenting job possibilities:

> Moreover, the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category. "[A] claimant's reliance on the *DOT* as a definitive authority on

job requirements is misplaced because *DOT* definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Page* [*v. Astrue,* 484 F.3d 1040], 1045 [(8th Cir. 2007)]. "The *DOT* itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Wheeler v. Apfel,* 224 F.3d 891, 897 (8th Cir. 2000); *see DOT* at xiii. "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the *DOT*." *Wheeler*, 224 F.3d at 897. There is nothing in the record to suggest that the vocational expert ignored the reasoning limitations in the hypothetical in determining that the listed occupations encompassed suitable jobs. *See Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir. 1991) ("[T]he ALJ could properly assume that the expert framed his answers based on the factors the ALJ told him to take into account."). Because substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the *DOT*, the ALJ properly relied on the testimony. *See Page*, 484 F.3d at 1045.

*Id.* at 604–05 (most brackets in original; brackets in *Page* citation added); *Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427, at *16 (N.D. Iowa Oct. 10, 2019) (discussing reliance on *DOT* as a definitive source of job requirements).

Like the hypothetical in *Moore* that did not include a specific limitation to 1-2-step instructions, the hypothetical in the case at bar did not include a 1-2 step limitation. As *Moore* cautions, the Court is not to write into a hypothetical that which the ALJ did not write in herself. Moreover, the hypothetical in *Moore* included a limitation to performing "simple, routine and repetitive work activity at the unskilled task level" 623 F.3d at 604, and the hypothetical in the case at bar included a limitation to "job duties that are simple, repetitive, and routine in nature. . .[and] duties that are consistently the same with little or no change," which requires that the outcomes of the cases should be the same. To the extent these hypotheticals are not identical, I find that the hypothetical in *Moore* was even more restrictive than the hypothetical in the case at bar because the *Moore* hypothetical

included the instruction limitation of "carrying out simple job instructions" that this case does not involve.[6] *Id.*

Claimant does not proffer an argument specifically related to the "never be expected to exercise independent judgment regarding the nature of his job duties" part of his RFC. To the extent Claimant argues that there is a conflict between the VE's testimony and this part of the hypothetical, I find that argument to be without merit. *DOT* occupational codes include classifications for responsibility and judgment. U.S. Dept. Labor, DOT, PTS. OF THE OCCUPATIONAL DEFINITION, The Occupational Code No., https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTPARTS.HTM. The codes assigned to ampoule sealer (*DOT* No. 559.687-014) and semi-conductor loader (*DOT* No. 726.687-030) indicate that the jobs are assigned the least complex responsibility and judgment ratings in all three categories that are rated: data, people, and things. *Id.*, https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05F.HTM; https://www.oalj.dol.gov/PUBLIC/DOT/ REFERENCES/DOT07C.HTM. The

_____

[6] Claimant also argues, "[a]lternatively, the ALJ's RFC is deficient as there no is explanation for why the '1- to 2-step' limitation suggested by the agency psychological consultants and supported by the consultative examination findings was not included in Mr. Smith's RFC." (Doc. 13 at 7.) That is the entirety of this argument. I find this argument fails for two reasons. First, if Claimant wished to raise this as a separate argument point, the argument is underdeveloped and therefore waived. *See Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010); *see also Aulston v. Astrue*, 277 F. App'x 663, 664-65, 2008 WL 2066019 (8th Cir. 2008) (declining to address underdeveloped argument) (citations omitted). Second, the ALJ did explain why she adopted the psychological RFC she adopted, including Claimant's lack of treatment over a course of years, disinterest in any treatment other than medication management; normal mental health assessments at medical appointments focused on physical problems; and failure to take medication as prescribed. (AR at 21-22.) The ALJ supported her decision with pinpoint citations to the record and a detailed history of Claimant's treatments and complaints over the years. (*Id.* at 17-22.) The ALJ also noted Claimant's lack of credibility because Claimant testified that he quit smoking, drinking, and doing illegal drugs in 2006 and only drank alcohol on Christmas, but treatment notes document that Claimant continues to engage in all these activities. (*E.g.*, *id.*, at 17-21, 61, 64, 400, 475, 483.)

semi-conductor bonder position (*DOT* No. 726.685-066) is assigned the least complex ratings in the data and people categories and is ranked 5/7 in the things category (with 7 being the least complex rating on a 0-7 scale).  https://www.oalj.dol.gov/PUBLIC/DOT/ REFERENCES/ DOT07C.HTM.  Thus, I find that there is no inconsistency between the VE's testimony and the *DOT* as it pertains to the RFC's judgment limitation.

Furthermore, the ALJ confirmed that the VE's testimony was consistent with the *DOT*.  (AR at 84.)  The VE also testified that the *DOT* does not define "in reaching any direction, and therefore it [was her] professional experience that lifting over the shoulder is not required in the jobs that [the VE] gave" the ALJ.  (*Id.*)  The VE further testified that because the *DOT*'s information regarding whether occupations require work with people or things does not define the degree of that work, she also based her testimony related to the amount of contact with the public or co-workers on her professional experience.  (*Id.* at 87.)  The ALJ was allowed to rely on the "VE's . . . experience in job placement or career counseling."  *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (quoting SSR 00-4p) (ellipses in original).

Accordingly, I find that there is no unresolved conflict between Claimant's RFC and the reasoning level requirements of the jobs relied on to deny benefits.  I recommend the District Court affirm the ALJ's decision on this issue.

**B.**    ***The ALJ sufficiently developed the record concerning Claimant's physical limitations.***

Claimant asserts that the ALJ was required to further develop the record regarding Claimant's physical limitations.   Specifically, Claimant asserts the ALJ should have ordered imaging of Claimant's right shoulder because there were no images in the record. (Doc. 13 at 9.)  Claimant argues this is necessary because the ALJ assigned only little weight to the opinion of Dr. Mark Taylor, who provided a consultative examination of Claimant on December 18, 2014.  (AR at 19, 417-22.)  In relevant part, Dr. Taylor

opined that Claimant would be "significantly limited due to the fact that he appears to protect his right upper extremity at all times." (Id. at 420.) He recommended a 20-pound lifting limit because Claimant would need to rely mainly on his left arm and that most lifting would need to be "at or near waist level or certainly between the knee and chest level." (Id.) Dr. Taylor recommended Claimant avoid lifting more than five pounds above shoulder level with his left arm. (Id. at 420-21.) He further recommended that Claimant should not elevate his right arm "anywhere near shoulder level and certainly cannot reach above shoulder level." (Id. at 421.) Dr. Taylor also opined that Claimant could rarely use his right arm and hand for reaching, gripping, or grasping, but could frequently use his left arm and hand for the same tasks. (Id.) He further stated that Claimant must work in a dust/fume/mist-free environment that was not hot or cold. (Id.)

Dr. Taylor also rendered opinions regarding Claimant's abilities to sit, stand, and walk. He gave Claimant no sitting limitations, but opined that Claimant "should alternate walking, standing, and sitting as needed for comfort, and cannot likely walk very far due to COPD and shortness of breath." (Id.) Overall, however, he opined that Claimant could occasionally stand and rarely walk. (TR 421). According to Dr. Taylor, Claimant could rarely stoop, bend, crawl, and kneel. (Id.)

The ALJ gave this opinion little weight and "note[d] there [was] no imaging regarding claimant's right shoulder." The ALJ continued,

> [i]n addition, he received no treatment for any condition from February 2015 to August 2016 and no other practitioner noted any limitation in claimant's ability to use his right shoulder. Therefore, the residual functional capacity [assigned] for a limited range of sedentary work with no overhead lifting or reaching is more consistent with the evidence as a whole on a longitudinal basis.

(Id. at 19.) In addition to Dr. Taylor's opinion, the ALJ also weighed the opinions of the state agency reviewing physicians, Lawrence Staples, M.D. and John May, M.D.,

who concluded Claimant could perform light work with limited right arm reaching and handling and occasional stair and ramp climbing, balancing, stooping, kneeling, crouching, and crawling. (*Id.* at 120-23, 139.) The physicians also opined that Claimant must never climb ladders, ropes or scaffolds. (*Id.* at 122, 138.) The ALJ gave these opinions little weight because Claimant's "lung condition is severe enough to warrant a limitation to sedentary work. . . ." (*Id.* at 22.)

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted). The ALJ must determine a claimant's RFC "'based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). A claimant's RFC must be supported by "at least some medical evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). However, there is no requirement that an RFC be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted).

Claimant cites *Combs v. Berryhill*, 878 F.3d 642, 647-48 (8th Cir. 2017) for the proposition that in cases "where there are no treating or examining source opinions in the record, the ALJ is not free to play doctor—the ALJ must not rely on his own inferences when weighing the available opinion evidence." (Doc. 13 at 8.) While that is certainly true, in this case, there was an opinion from an examining source. As discussed above, Dr. Taylor examined Claimant in December 2014. Claimant even calls

Dr. Taylor "[t]the examining physician" (*Id.*), and therefore acknowledges this fact. Thus, the only question is whether the evidence in the record provided "a sufficient basis for the ALJ's decision." *Kamann*, 721 F.3d at 950 (citation omitted). Treatment notes can constitute evidence that supports a claimant's RFC. *See Hensley*, 829 F.3d at 932.

In the case at bar, the evidence in the record provided a sufficient basis for the ALJ's decision. The ALJ weighed the evidence in the record, cited extensively to the record, and discussed every opinion, and many individual treatment notes. (AR at 17-22.) The ALJ explained that Claimant had received very little treatment for his shoulder problems and that when he had a thorough preoperative physical on February 16, 2017, he "did not present with symptoms indicating he was significantly limited, whether physically or mentally." (*Id.* at 21.) Indeed, as the ALJ indicated, the record shows that Claimant rarely sought treatment for shoulder issues, consistently had normal range of motion and otherwise normal musculoskeletal exams, and that treatment notes do not mention his holding his arm against his body as he did when seeing Dr. Taylor. (*See, e.g.*, 17-22, 465, 474, 502.) Even when Claimant went to the doctor reporting shoulder problems, he had a normal shoulder examination, including range of motion, movement, and strength examinations. (*Id.* at 474.) This lack of treatment for, or even complaint about, shoulder issues in the record supports the ALJ's conclusion on this issue. *See Hacker*, 459 F.3d at 936 (An ALJ's decision is "not outside [the acceptable] zone of choice simply because the court might have reached a different decision.").

In addition, three medical professionals offered opinions regarding Claimant's shoulder limitations: Dr. Taylor and two state agency reviewing physicians. The ALJ assigned little weight to each opinion. Therefore, the ALJ's opinion is supported by medical evidence in the record. *See Knibbe v. Berryhill*, No. 18-CV-4043-LTS, 2019 WL 2167407, at *12 (N.D. Iowa May 17, 2019) (RFC supported by substantial evidence when ALJ did not give any opinion controlling weight, but gave some weight to each

opinion) (citation omitted), *R. & R. adopted sub nom. Knibbe v. Saul*, 2019 WL 3777002 (N.D. Iowa Aug. 12, 2019).

Although the ALJ assigned an RFC that was more restrictive than the state agency physicians' opinions and less restrictive in some respects than Dr. Taylor's opinion (*Id.* at 16) and explained why. (*Id.* at 17-21.) Claimant still asserts that because there was no shoulder imaging in the record, the ALJ was required to obtain a shoulder image. However, the ALJ was only required to obtain additional medical evidence if she was unable to make a decision based on the evidence already in the record. Here, the ALJ evaluated medical records spanning almost three years, all the relevant medical evidence Claimant submitted.

The ALJ incorporated many of Dr. Taylor's limitations into the final RFC, in spite of only assigning his opinion little weight. The ALJ incorporated Dr. Taylor's unlimited sitting restriction, stating Claimant could sit for eight hours a day. (*Id.* at 16.) He also incorporated Dr. Taylor's overall limitations of occasional standing; rare walking; and alternating walking, standing, and sitting into the RFC by limiting Claimant to sedentary work with standing and walking "for 2 hours out of 8 hours spaced throughout the workday." (*Id.*) The ALJ actually assigned a more restricted lifting limit than Dr. Taylor, limiting Claimant to lifting 5 pounds frequently and up to 10 pounds occasionally, as opposed to lifting 20 pounds. (*Id.*) The ALJ also assigned more restrictive right hand "hard, repetitive grasping" limitations than Dr. Taylor. (*Id.*) The RFC's environmental restrictions include all the limits proposed by Dr. Taylor plus additional limitations on wetness, humidity, odors, and airborne particulates. (*Id.*)

The only RFC limitation that seems in conflict with Dr. Taylor's recommendations is the limitation that Claimant "should never lift, carry, push, pull, or reach above shoulder level bilaterally," which, arguably, is at odds with Dr. Taylor's recommendation that Claimant should not elevate his right arm "anywhere near shoulder

level and certainly cannot reach above shoulder level." (*Id.* at 420-21.) Given the dearth of clinical findings of weakness or range of motion limitations in Claimant's medical records (*E.g. id.* at 465, 474, 502), I find that the ALJ's decision on this issue is supported by substantial evidence in the record as a whole.

Contrary to Claimant's argument, lack of treatment for an alleged condition does not require a consultative examination. Lack of treatment is one factor an ALJ can weigh when deciding if a claimant is credible. *Davis v. Barnhart*, 197 F. App'x 521, 522 (8th Cir. 2006); *Stout v. Sullivan*, No. C 91-3072, 1993 WL 102740, at *1 (N.D. Iowa Mar. 27, 1992), *aff'd sub nom. Stout v. Shalala*, 988 F.2d 853 (8th Cir. 1993). Here, the ALJ not only relied on Claimant's lack of treatment to find him not credible, but also on the disconnect between his testimony that he quit smoking, drinking, and doing drugs in 2006 and the many notations in the medical treatment notes of Claimant smoking cigarettes, drinking alcohol, smoking marijuana, and doing cocaine. (AR at 17-18, 20.) Thus, the ALJ found Claimant's testimony unreliable. (*Id.* at 17.) In addition, the ALJ explained that he gave little weight to Claimant's Adult Function Report, which his wife helped him complete, because the severity of the symptoms alleged in the report was not supported by the evidence in the record. (*Id.* at 22, 308-15.) More importantly, as discussed, the medical record does not support greater RFC limitations than those assigned by the ALJ. Thus, contrary to Claimant's argument, the ALJ's notations that there was no imaging of Claimant's shoulder (AR at 19, 20), do not indicate a need for such images to complete the record. In context, the lack of imaging indicates that Claimant's shoulder problems were not severe enough to warrant imaging. (*Id.*) The ALJ was obviously not opposed to ordering tests when she felt the record was incomplete because, as Claimant notes, the ALJ ordered pulmonary function testing for Claimant. (*Id.* at 431-32.)

18

Claimant also argues that the ALJ failed "to find some reliable treating or examining source to explain how [Claimant's] physical impairment, including his COPD, impacted his ability to work." (Doc. 13 at 10.) However, the ALJ ordered pulmonary function testing for Claimant. Claimant had prebronchodilator forced vital capacity ("FVC") of 3.00 and forced expiratory volume ("FEV1") of 1.87 and post-bronchodilator FVC of 3.08 and FEV1 of 2.04. (AR at 433.) The ALJ limited Claimant to an indoor work environment with additional environmental limitations to accommodate the results of the pulmonary function test. (*Id.* at 20.) Claimant does not take issue with the environmental limitations included in the RFC. Treatment notes in the record document that when Claimant was compliant with his pulmonary medications, he consistently had good air movement, normal breath sounds with no wheezes, crackles, or rales during his medical examinations, even when he complained of cough and chest pain. (*E.g., id.*, at 456, 470, 474, 538.) Impairments that are managed with medication are not disabling. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016); *Stout*, 988 F.2d at 855 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *Contra* (AR at 505-06 (Claimant had "course breath sounds" when he admitted he did not use his inhaler).) Thus, the ALJ was not required to obtain an additional treating source opinion because there was enough evidence in the record as a whole to support the ALJ's decision on this issue.[7]

Based on the above, I find that the ALJ had a sufficient record upon which to base her decision, an additional medical opinion is not necessary, and the ALJ's decision

---

[7] To the extent Claimant asserts an argument related to his heart issues in the broad statement, that the ALJ failed "to find some reliable treating or examining source to explain how [Claimant's] physical impairment, including his COPD, impacted his ability to work" (Doc. 13 at 10), I find that the argument is not developed enough for the Court to address and is therefore waived. *See Gragg*, 615 F.3d at 938; *Aulston*, 277 F. App'x at 664-65.

regarding Claimant's physical RFC is supported by substantial evidence on the record as a whole and should not be reversed. I recommend that the District Court affirm the ALJ's decision on this issue.

## C. *Claimant failed to timely raise his Appointments Clause argument under Lucia v. SEC.*

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that SSA ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. Claimant asserts this Court should vacate the denial of benefits by ALJ Cooke and remand the case for decision by what he contends is a properly-appointed ALJ. Claimant admits that he is asserting his Appointments Clause challenge for the first time in his opening brief to this Court.

Claimant does not argue that his case presents any factual or procedural differences from other cases that have previously been addressed by this Court. Rather, Claimant asserts that his case can be distinguished because many of the cases decided in this District were decided before EM-18003 was issued by the SSA and before former Acting Commissioner Berryhill's authority lapsed, which led the SSA to "lack a Department Head that could provide a remedy for an Appointments Clause challenge." (Doc. 13 at 10-11.)

For support, Claimant cites SSR 19-1p, 2019 WL 1202036, Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* on Cases Pending at the Appeals Council. However, SSR 19-1p is inapplicable to Claimant's case because the ruling only applies to challenges timely raised before the Appeals Council or previously raised at the ALJ level. 2019 WL 1202036, at *9583; *see also Murphy v. Comm. of Soc. Sec.*, No.

18-CV-61-LRR, 2019 WL 2372896, at *7 (N.D. Iowa June 12, 2019) (addressing SSR 19-1p and holding that claimant waived *Lucia* issue when she raised it for the first time in the district court).[8]

Claimant also cites *Bizarre v. Berryhill*, 364 F. Supp. 3d. 418 (M.D. Pa. 2019) for support and encourages the Court to adopt that court's reasoning in this case.[9] The *Bizarre* court held that it did "not believe that [the claimant] was required to raise his [Appointments Clause challenge] before the ALJ or Appeals Council in the first instance or that failure to do so worked a forfeiture of that claim." *Id.* at 425. I respectfully disagree and decline to adopt the *Bizarre* court's holding. Instead, I agree with the holding in *Murphy*: "[T]he court respectfully disagrees with the *Bizarre* court's holding. This court believes that failure to raise an Appointments Clause challenge before the ALJ or Appeals Council at the agency level waives the issue on judicial review at the district court level." 2019 WL 2373896, at *7 (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013); *Anderson*, 344 F.3d at 814).

This Court has ruled in favor of the Commissioner on similar claims on several occasions. *See Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427, at *16 (N.D. Iowa Oct. 10, 2019); *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at *20 (N.D. Iowa Sept. 30, 2019); *Squier v. Saul*, No. 18-CV-3026-LTS, 2019 WL

---

[8] *Murphy* is currently on appeal to the Eighth Circuit Court of Appeals. *Murphy v. Comm. of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896 (N.D. Iowa June 12, 2019), *appeal docketed*, *sub nom. Murphy v. Saul*, No. 19-2202 (8th Cir. June 12, 2019).

[9] Claimant also cites *Fortin v. Comm'r of Social Security*, No. 18-cv-10187, 2019 WL 421071 at **1-4 (E.D. Mich. Feb. 1, 2019) (R. & R.), which held the same way as *Bizarre* held. (Doc. 13 at 11.) Claimant's reliance on *Fortin* is misplaced because the District Court reversed this part of the Magistrate Judge's R. & R. 372 F. Supp. 3d 558, 567-68 (E.D. Mich. 2019). The District Court's decision is currently on appeal to the Sixth Circuit Court of Appeals. *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558 (E.D. Mich. 2019), *appeal docketed*, No. 19-1581 (6th Cir. May 24, 2019).

4696415, at *10 (N.D. Iowa Sept. 26, 2019); *Rollie v. Saul*, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR, 2019 WL 4344288, at *6 (N.D. Iowa Sept. 12, 2019); *Sexton v. Saul*, No. C18-1024-LTS, 2019 WL 3845379, at *8 (N.D. Iowa Aug. 15, 2019); *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996, at *4 (N.D. Iowa Aug. 12, 2019); *Murphy*, 2019 WL 2372896, at *7; *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa  Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

> The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent].  Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief.  *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).

> In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id*. In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.

Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

Finally, Claimant's argument that raising the issue during the administrative process would have been futile because former Acting Commissioner Berryhill's authority lapsed between November 2017 and April 2018, leaving no one at the SSA with the "power to correct the Appointments Clause issue during much of the time the claim was pending with the Appeals Council" is unavailing. (Doc. 13 at 16.) Nothing prevented Claimant from raising this issue in his appeal to the Appeals Council and preserving it for appeal to this Court. I recommend the District Court affirm the ALJ's decision on this issue.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ.**

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo*

review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **DONE AND ENTERED** this 9th day of December, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa